UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-23983-CIV-SINGHAL

REMBERTO MOYA,

     Petitioner,

v.

UNITED STATES DEPARTMENT
OF HOMELAND SECURITY, *et al.*,

     Respondents.

_____/

## **ORDER**

**PETITIONER REMBERTO MOYA** is a Cuban national, and he was paroled into the United States on August 16, 1994.  (DE 9-2] ¶ 6).  He was granted lawful permanent resident status on March 30, 2001.  *Id.* ¶ 9.  On January 30, 2004, Petitioner was convicted of smuggling aliens for profit and bringing in aliens other than through a designated port of entry.  (DE [9-4]).  He was sentenced to five years imprisonment.  *Id.* On November 28, 2007, Petitioner was placed in removal proceedings—even though he was a lawful permanent resident—because he had encouraged or aided aliens to enter the country illegally.  (DE [9-3]).  On January 29, 2008, Petitioner was ordered removed to Cuba.  (DE [9-6]).  On March 26, 2008, Petitioner was issued an order of supervision, and on April 29, 2008, he was released.  (DE [9-7]).  On May 29, 2026, Border Patrol Agents came across Petitioner's vehicle while Petitioner was out boating on the water.  (DE [9-1]).  After running his vehicle registration and determining he was subject to an order of removal, Border Patrol agents waited for him to return to the vehicle, and then stopped the vehicle as he was driving out from the marina.  *Id.*  Petitioner was placed in

immigration detention on June 2, 2026, and on June 3, Immigration Customs Enforcement ("ICE") revoked his order of supervision to enforce the order of removal. (DE [9-5]; [9-9]).  Also on June 3, ICE informally interviewed Petitioner and provided him a copy of the Notice of Revocation of his release.  *Id.*; (DE [9-10]).  ICE also gave Petitioner a Notice of Removal, indicating their intent to remove him to Mexico, but Petitioner refused to sign the notice of removal.  (DE [9-11]).  Petitioner then filed the instant Petition for Writ of Habeas Corpus (DE [1]).  Petitioner argues that he is being detained in violation of both 8 U.S.C. § 1231 and his due process rights, and that the government improperly revoked his order of supervision.  The government responded, Petitioner filed a reply, and the Court held a hearing on June 23, 2026.  (DE [15]).  Because Petitioner has been detained for less than a month, his detention does not violate his statutory or due process rights.  Neither did the government violate the regulations when revoking Petitioner's release.  The Petition (DE [1]) is denied.

I.      LEGAL STANDARD

District courts have authority to grant writs of habeas corpus.  28 U.S.C. § 2241(a).  Habeas corpus is fundamentally "a remedy for unlawful executive detention."  *Munaf v. Geren,* 553 U.S. 674, 693 (2008) (citation omitted).  A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law.  *See* 28 U.S.C. § 2241(c)(3).  The court's jurisdiction extends to challenges involving immigration-related detention.  *See Zadvydas v. Davis,* 533 U.S. 678, 687 (2001).

II.     DISCUSSION

Before addressing the merits of the Petition, the Court starts with the issue of jurisdiction.  The Court asked both parties to address at the hearing whether the Court

2

had jurisdiction.  (DE [11]).  Consistent with *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the parties seemed to agree that the Court possesses jurisdiction here.  The Court is satisfied that it retains jurisdiction over this matter.

    A.  <u>Statutory and Due Process Arguments</u>

Petitioner argues that his detention violates his due process rights and is contrary to 8 U.S.C. § 1231, as interpreted by *Zadvydas*.  Petitioner argues that the six-month period where detention is presumed reasonable ran in June 2008, six months after Petitioner was initially detained.  Even though Petitioner was released under an order of supervision on April 29, 2008, Petitioner argues that he was still detained for purposes of § 1231 and *Zadvydas* since he was under an order of supervision and was required to report to ICE regularly.  This is an intriguing argument, and Petitioner's counsel made excellent points.  But the time restrictions in both § 1231 and *Zadvydas* apply to time in detention, not time under an order of supervision.

Section 1231 differentiates detention from release under supervision.  The government has 90 days to remove an alien after the removal order becomes final. § 1231(a)(1).  During that removal period, the alien must be detained. § 1231(a)(2).  The removal period can also be extended in certain circumstances. § 1231(a)(1)(C).  But if the government does not remove the alien within the removal period, the alien is to be released on supervision. § 1231(a)(3).  The statute explicitly differentiates between detention and release on an order of supervision and actually makes release on supervision the remedy for extended detention.  If the Court interpreted release on an order of supervision to count as detention, the statutory remedy would actually become part of the ill that § 1231(a)(3) seeks to cure.  The remedy cannot be the disease.  The

logical conclusion is that under § 1231, days spent released under an order of supervision do not toll against the statutory detention limits.

Similarly, *Zadvydas* applies to days spent in detention, not days released on supervision. In *Zadvydas* the Supreme Court addressed whether two aliens could be detained indefinitely or whether they were entitled to release under an order of supervision. *Zadvydas,* 533 U.S. at 684-86. The Fifth Circuit overturned a trial court order granting release on an order of supervision, reasoning that the alien's removal was not impossible. *Id.* at 684-85. The Ninth Circuit affirmed release on supervision, applying constitutional avoidance and construing § 1231 to only allow detention for a reasonable period of time after the initial 90-day period. *Id.* at 685-86. The Supreme Court determined that detention was presumed reasonable for up to six months, and then the alien still had to show that removal was not reasonably foreseeable. *Id.* at 701. Only then would the burden shift to the government to show removal was not likely to occur soon. The Supreme Court vacated and remanded both cases to apply this test. *Id.* at 702.

In *Zadvydas*, the entire issue was whether aliens could be detained or whether they were entitled to release under supervision. If the six-month timeframe included detention *and* supervised release, the Supreme Court's opinion would have been entirely different. The Supreme Court would have required both lower courts to aggregate the time the aliens had spent in detention with the time each alien spent out on supervised release. But the Supreme Court did not address that. Release on supervision is the remedy for indefinite detention, not part of detention.

Here, Petitioner has not been detained for six months. Even if the Court

considered his 2008 detention,[1] Petitioner has been detained for less than four months. His statutory and due process rights have not been violated.

  B. <u>Improper Revocation of Release Argument</u>

  The Immigration and Nationality Act ("INA") itself does not address how release under an order of supervision is to be revoked.  Instead the INA authorized the Attorney General to issue regulations governing release.  Under these regulations—particularly 8 C.F.R. § 241.4(l)—the government may revoke an alien's release when the government is ready to remove the alien.  "Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole."  § 241.4(l)(1).  After revocation of release, "[t]he alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."  *Id.*  If not released after the informal interview, the government schedules a full custody review to occur within three months of revocation.  § 241.4(l)(3).  But the government does not conduct a custody review if the government "notifies the alien that it is ready to execute an order of removal."  § 241.4(g)(4).

  Petitioner argues that the government did not satisfy these requirements and did not provide him a meaningful chance to respond to the notice of revocation.  Petitioner was detained on June 2, 2026.  (DE [9-4]).  On June 3, 2026, at 3:15 p.m., ICE provided Petitioner a copy of the notice of revocation, stating that ICE intended to execute Petitioner's removal order.  (DE [9-9]).  At 3:30 p.m., ICE issued a notice of removal, so

---

[1] Like other courts in this District, the Court does not recognize prior detention for *Zadvydas* purposes when an alien is re-detained after release.  *See Habash v. Warden, Krome Serv. Processing Ctr.*, 2026 WL 1217754, at *4 (S.D. Fla. May 5, 2026) (Ruiz, J.); *Flores-Reyes v. Assistant Field Off. Dir.*, 2026 WL 406708, at *2-3 (S.D. Fla. Feb. 13, 2026) (Altman, J.); *Barrios v. Ripa*, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) (Gayles, J.). Re-detention restarts the clock for counting days in detention.

presumably the informal interview was complete.  (DE [9-11]).  During the informal interview, Petitioner did not provide a written statement or any documents.  (DE [9-10]).  And according to Deportation Officer Deborah Lauciello's Declaration, Petitioner did not make any oral response during the interview.  (DE [9-2] ¶ 21).

Although fifteen minutes is not a long interview, there is no indication in the record that more time was necessary.  The interview is supposed to be informal and conducted "promptly after [the alien's] return to Service custody."  § 241.4(l)(1).  To comply with the regulation, the interview will necessarily be conducted shortly after the alien receives the notice.  Although some courts have determined that an informal interview should not be conducted on the same day the alien is provided notice, *see Someillan v. Mullin*, 2026 WL 1146076, at *8 (M.D. Fla. Apr. 28, 2026), there is no such per se rule in the regulations.  Petitioner did not make even an oral response to the notice—he did not request more time or say that he did not understand why his release was being revoked.  (DE [9-2] ¶ 21).  Rather, he was silent.  The informal interview process does not require the government to give an alien a specific amount of time to come up with reasons against the revocation of release.  It is an informal interview, and it must be provided promptly.  There is no evidence here that the alien wanted or needed more time.

Based on the evidence before the Court, Respondents did not violate the regulations governing the revocation of release.

III.    CONCLUSION

Petitioner presents well-reasoned arguments.  But the Court concludes that Petitioner's statutory, constitutional, and regulatory rights have not been violated and that Petitioner's detention is lawful.  Accordingly, it is hereby **ORDERED AND ADJUDGED**

that the Petition (DE [1]) is **DENIED**.  The Clerk of Court is directed to **CLOSE** this case,

**CANCEL** all hearings and deadlines, and **DENY AS MOOT** any pending motions.

      **DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 29th day of

June 2026.

_____

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF